```
                                                        USDC SDNY
                                                        DOCUMENT
                                                        ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                            DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                           DATE FILED:   7/25/16
```

```
-------------------------------------------------------------X
ZUBAIR PATEL, individually and on behalf of all :
others similarly situated,                      :
                                                :    14-CV-6038 (VEC)
                                  Plaintiff,    :
                                                :    MEMORANDUM
             -against-                          :    OPINION AND ORDER
                                                :
L-3 COMMUNICATIONS HOLDINGS, INC.,              :
                                                :
                                  Defendant,    :
-------------------------------------------------------------X
ALAN NGUYEN, individually and on behalf of all :
others similarly situated,                      :
                                                :
                                                :
                                  Plaintiff,    :
                                                :
                                                :
             -against-                          :
                                                :    14-CV-6182 (VEC)
L-3 COMMUNICATIONS HOLDINGS, INC.,              :
                                                :
                                  Defendant.    :
-------------------------------------------------------------X
CARMEN VALENTINO, individually and on          :
behalf of all others similarly situated,        :
                                                :
                                                :
                                  Plaintiff,    :
                                                :
                                                :
             -against-                          :
                                                :
L-3 COMMUNICATIONS HOLDINGS, INC.,              :
                                                :    14-CV-6939 (VEC)
                                  Defendant.    :
-------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Lead Plaintiffs City of Pontiac General Employees' Retirement System, Local 1205 Pension Plan, and City of Taylor Police and Fire Retirement System, on behalf of themselves and all others who purchased L-3 Communications Holdings, Inc. ("L-3") common stock

between January 30, 2014, and July 30, 2014 ("Class Period"), have brought this action against L-3 for alleged violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a).[1] This pending discovery dispute stems from Lead Plaintiffs' demand for and non-party AlixPartners, LLP's ("Alix") refusal to produce certain work papers and communications prepared in the course of an internal investigation conducted on behalf of L-3 at the direction of L-3's outside counsel, Simpson Thacher & Bartlett LLP ("Simpson"). Assuming the parties' familiarity with the facts, history, and procedural posture of the case, the Court only discusses the facts most relevant to this discovery dispute.

## BACKGROUND

Lead Plaintiffs allege that all of L-3's reported financial statements during the Class Period were materially false and misleading due to accounting improprieties in L-3's Army Sustainment Division ("ASD") related to a contract to service U.S. Army C-12 airplanes ("C-12 Contract"). ASD was a division two levels down within L-3's Aerospace Systems segment, which was one of L-3's three major business segments. Lead Plaintiffs' claim is based in part on L-3's admission that an intentional override of internal controls—reaching as high as the Aerospace Systems management level—contributed to the financial misstatements.

In response to internal allegations of misconduct related to the C-12 contract, L-3 conducted an internal investigation under the direction of L-3's in-house counsel. Declaration of Michael J. Garvey in Support of Defendant L-3 Communications Holdings, Inc.'s Opposition to Lead Plaintiffs' Motion to Compel the Production of Certain Documents from AlixPartners, LLP ("Garvey Decl.") ¶ 3 (Dkt. 94). On June 19, 2014, L-3 engaged Simpson to complete the investigation. *Id.* ¶ 4. On July 25, 2014, Simpson retained Alix, a forensic accounting firm, (1)

---

[1] Plaintiffs' claims against the named individual defendants were dismissed on March 30, 2016 (Dkt. 60).

to assist in the investigation of other potential accounting misconduct or errors at ASD and at other Aerospace Systems divisions and (2) to help Simpson advise L-3. *Id.* ¶¶ 14, 16. Because by that time the investigation of the accounting irregularities associated with the C-12 Contract was largely complete, Alix "had no role or involvement" in the C-12 misconduct investigation. *Id.* ¶ 15. Also by that time, L-3 anticipated shareholder litigation and potential government investigations, given its findings of intentional misconduct connected to the C-12 Contract. *Id.* ¶ 16.

Simpson reported its findings to L-3 in late July 2014. *Id.* ¶ 5. On July 31, 2014, L-3 self-reported to the Securities Exchange Commission ("SEC") and to the U.S. Army that it had discovered misconduct related to accounting for the C-12 Contract, and L-3 fired four individuals based on the results of its investigation. *Id.* ¶¶ 6-7. At the same time, L-3 publicly disclosed that it had identified intentional misconduct and additional accounting errors within Aerospace Systems. *Id.* ¶ 8. On August 1, 2014, Lead Plaintiffs filed this lawsuit, and the SEC requested that L-3 preserve certain documents. *Id.* ¶¶ 9-10. On August 4 and 5, 2014, Simpson provided information to the SEC and Department of Justice ("DOJ"), and L-3 received document subpoenas from the SEC and DOJ on August 6 and 8, respectively. *Id.* ¶¶ 11-13. Alix's review in conjunction with Simpson continued until October 2014, when L-3 filed its second quarter 10-Q. *Id.* ¶ 14.

On June 28, 2016, counsel for Lead Plaintiffs, L-3, Alix, and another non-party, PricewaterhouseCoopers ("PwC"), participated in a telephone conference with the Court to resolve several discovery disputes between Lead Plaintiffs and the non-parties.[2] On May 13, 2016, Lead Plaintiffs had served Alix with a subpoena to produce: (1) Alix's work papers and

---

[2] Simpson is counsel for both L-3 and Alix.

drafts relating to ASD; (2) Alix's internal and external communications relating to the ASD investigation and revision; and (3) communications between Alix and L-3 from July 23, 2014 to November 1, 2014 regarding ASD (collectively, "Disputed Materials"). Letter Motion to Compel of July 8, 2016 ("Pls.' Mot."), at 1 (Dkt. 89). Alix refused to fully comply with the subpoena on relevance and privilege grounds. *Id.* The Court limited Plaintiffs' requests for discovery from Alix to: (1) communications between Alix Partners and PwC between July 23 and 31, 2014, and (2) documents Alix Partners had shared with PwC regarding the internal investigation and review of L-3. Dkt. 74, at 1.[3] The Court allowed the parties to submit letter briefs addressing whether the remaining discovery sought by Lead Plaintiffs from Alix is protected as privileged or work product material. *Id.* at 2.

On July 8, 2016, Lead Plaintiffs submitted a motion to compel Alix to produce additional discovery and a declaration from counsel for Lead Plaintiffs, David Rosenfeld, in support of their position that the Disputed Materials are relevant and are not subject to attorney work product protections. *See generally* Pls.' Mot. In response, on July 13, 2016, L-3 filed a letter in opposition and a declaration from counsel for L-3 and Alix, Michael Garvey, arguing that the Disputed Materials are not relevant and are protected by attorney work product doctrine and attorney-client privilege. *See generally* Letter Response of July 13, 2016 in Opposition to Motion ("Simpson Opp'n") (Dkt. 93).

For the following reasons, the Court holds that the Disputed Materials, although potentially relevant, are protected as attorney work product and are therefore protected from disclosure.

---

[3] The Court also resolved the discovery disputes between Lead Plaintiffs and PwC.

## DISCUSSION

### I. The Disputed Materials May Be Relevant to Lead Plaintiffs' Claim Regarding L-3's Internal Controls

Lead Plaintiffs argue that the Disputed Materials are relevant to Lead Plaintiffs' claim because Alix, through its internal investigation work, played an important role in uncovering the accounting misconduct and internal control deficiencies. Pls.' Mot 2, 3. L-3, on the other hand, argues that Alix's investigation was entirely separate from Simpson's investigation into the C-12 Contract accounting irregularities and was focused more broadly than just ASD. Simpson Opp'n 5. L-3 emphasizes that most of Alix's work took place *after* L-3 self-reported and publicly disclosed the intentional misconduct and *after* Lead Plaintiffs initiated this lawsuit. *Id.*

The Court finds that the Disputed Materials are conceivably relevant to Lead Plaintiffs' claim that L-3's internal controls were deficient. The purpose of Alix's investigative work was to determine whether additional accounting misconduct or errors—unrelated to the C-12 Contract—existed within Aerospace Systems. Although Lead Plaintiffs' claim does not include financial misstatements other than those regarding the C-12 Contract, because Alix conducted a broader review of Aerospace Systems than Simpson had done, the Disputed Materials could include documents containing information relevant to Lead Plaintiffs' claim that L-3 did not have adequate internal controls, including at the Aerospace Systems management level.

### II. The Disputed Materials Are Protected from Disclosure as Attorney Work Product

Under the Federal Rules of Civil Procedure, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). A document is prepared in anticipation of litigation when it is prepared "because of existing or expected litigation." *United States v.*

*Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998).  "[D]ocuments that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected from discovery as attorney work product because they were not created because of actual or impending litigation.  *Id.* at 1202.  Nevertheless, a document created because of the prospect of litigation "does not lose protection . . . merely because it is created in order to assist with a business decision."  *Id.*  "[T]o demonstrate that material is protected by the attorney work product doctrine, a party need only show that, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015) (quoting *Schaeffler v. United States*, 22 F. Supp. 3d 319, 335 (S.D.N.Y. 2014)).

      The parties contest whether the Disputed Materials were prepared in anticipation of litigation.  According to Lead Plaintiffs, the Disputed Materials are not attorney work product because they would have been created in essentially the same form irrespective of litigation.  Pls.' Mot. 1.  Lead Plaintiffs argue that the forensic accounting review would have been conducted with or without anticipated litigation because (1) L-3 was responding to a call on its ethics hotline regarding misconduct, and (2) L-3 was legally obligated to conduct an investigation to determine whether its prior statements were materially false and required revision.  *Id.* at 3, 4-5.  L-3 responds that Simpson hired Alix on behalf of L-3 with an eye to anticipated litigation and for advice concerning litigation exposure.  *See* Simpson Opp'n 3.  Moreover, L-3 contends that even if L-3 had independent obligations to conduct the broader investigation facilitated by Alix, work product privilege applies to documents prepared for multiple purposes.  *Id.* at 4.

6

The Court agrees with L-3—the Disputed Materials were created because of expected litigation. While L-3 would have, or at least should have, conducted a review upon learning of the fraud allegation, the scope and manner of conducting the investigation was clearly influenced by the expectation and reality of litigation. In the midst of Simpson's internal review that had *already* uncovered intentional misconduct, Simpson hired Alix to conduct a broader review. Garvey Decl. ¶¶ 4-5, 6-8, 14-15. Less than a week later, L-3 self-reported to the SEC, the Army, and the public. *Id.* ¶¶ 6-8. The following day—within one week of hiring Alix—this lawsuit started *and* the SEC instructed L-3 to retain documents. *Id.* ¶¶ 9-10. Within another week, the SEC and DOJ had served subpoenas on L-3. *Id.* ¶¶ 12-13.

It did not take a fortune teller with a well-tuned crystal ball to know that the disclosure of the C-12 Contract accounting misstatements would generate at least one private securities class action lawsuit and government investigations. Clearly, Alix was retained in light of the looming specter of just such litigation. Although L-3 may have had independent obligations or business reasons to seek to assure itself that the accounting problems discovered within ASD were limited to the C-12 Contract and were not duplicated elsewhere in the company, that fact does not alter the reality that the review was conducted as it was in large part because of expected litigation.[4] Because work product protection applies even when documents are created for multiple purposes, it applies in this case. *See Adlman*, 134 F.3d at 1202.[5] Simpson also attested that

---

[4] Any responsible company faced with intentional financial misstatements, particularly when there is involvement by a high ranking employee, should want to assure itself that it does not have a larger problem. Regardless of whether a company is appropriately curious, however, the DOJ's and SEC's internal processes for evaluating a company that discovers misconduct encourage just such searching internal inquiries. Because the DOJ and SEC will want to know whether there are any other skeletons in the company's closet, a full investigation is essentially required for the company to make a complete presentation to the government. That being the case, it is impossible to view Alix's investigation as anything other than a rational response to optimize L-3's situation in dealing with the Government, as well as with private litigants.

[5] *See also In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 532 (document need not have been prepared "primarily or exclusively to aid in litigation" in order for work product protection to apply); *In re Veeco*

Simpson and Alix would not have conducted the review in the manner they did in the absence of anticipated litigation, Garvey Decl. ¶ 16, distinguishing this case from *Allied Irish Banks v. Bank of Am., N.A.*, on which Lead Plaintiffs rely heavily.  *Cf.* 240 F.R.D. 96, 106-09 (S.D.N.Y. 2007) (holding Plaintiff's documents created during internal investigation by outside counsel and by banking expert were not protected as work product because they would have been created in substantially similar form for their non-litigation business purpose, and Plaintiff failed to provide any evidence to rebut that finding).

Accordingly, although potentially relevant, the Disputed Materials are protected from disclosure as attorney work product.  Because the Court finds the Disputed Materials to be attorney work product, it need not reach the question of whether the Disputed Materials are also protected by attorney-client privilege.

## CONCLUSION

For the reasons stated above, the Disputed Materials are protected as attorney work product, and therefore Plaintiffs' motion to compel discovery is DENIED.  The Clerk of Court is respectfully directed to close docket entry eighty-nine.

**SO ORDERED.**

**Date:  July 25, 2016**  
**New York, New York**

**VALERIE CAPRONI**  
**United States District Judge**

---

*Instruments, Inc. Sec. Litig.*, No. 05-MD-01695 (CM) (GAY), 2007 WL 724555, at *7-8 (S.D.N.Y. Mar. 9, 2007) (designating as protected work product documents created by outside counsel's forensic accountants both in order to assist outside counsel in providing legal advice regarding an internal investigation and to assist in ensuring the accuracy of the company's public disclosures); *In re Woolworth Corp. Sec. Class Action Litig.*, No. 94 CIV. 2217 (RO), 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996) (finding internal notes and memoranda prepared during internal investigation by outside counsel and by accounting firm hired by outside counsel constituted attorney work product because litigation and regulatory action "were virtually certainties" and the "distinction between 'anticipation of litigation' and 'business purposes' [wa]s in th[at] case . . . essentially blurred to oblivion").